# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAWN M. DEPOTO,
    Plaintiff,

        v.                                              No. 3:16-cv-00254 (SRU)

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
        Defendant.

## RULING ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

In the instant Social Security appeal, Dawn Depoto moves to reverse the decision by the

Social Security Administration (SSA) denying her disability insurance benefits. The

Commissioner of Social Security moves to affirm the decision. Because the decision by the

Administrative Law Judge (ALJ) was supported by substantial evidence, I grant the

Commissioner's motion and deny Depoto's.

## I.    Standard of Review

The SSA follows a five-step process to evaluate disability claims. *Selian v. Astrue*, 708

F.3d 409, 417 (2d Cir. 2013) (per curiam). First, the Commissioner determines whether the

claimant currently engages in "substantial gainful activity." *Greek v. Colvin*, 802 F.3d 370, 373

n.2 (2d Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not

working, the Commissioner determines whether the claimant has a "'severe' impairment," i.e.,

an impairment that limits his or her ability to do work-related activities (physical or mental). *Id.*

(citing 20 C.F.R. §§ 404.1520(c), 404.1521). Third, if the claimant does have a severe

impairment, the Commissioner determines whether the impairment is considered "per se

disabling" under SSA regulations. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). If

the impairment is not per se disabling, then, before proceeding to step four, the Commissioner determines the claimant's "residual functional capacity" based on "all the relevant medical and other evidence of record." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545(a)). "Residual functional capacity" is defined as "what the claimant can still do despite the limitations imposed by his [or her] impairment." *Id.* Fourth, the Commissioner decides whether the claimant's residual functional capacity allows him or her to return to "past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)). Fifth, if the claimant cannot perform past relevant work, the Commissioner determines, "based on the claimant's residual functional capacity," whether the claimant can do "other work existing in significant numbers in the national economy." *Id.* (20 C.F.R. §§ 404.1520(g), 404.1560(b)). The process is "sequential," meaning that a petitioner will be judged disabled only if he or she satisfies all five criteria. *See id.*

The claimant bears the ultimate burden to prove that he or she was disabled "throughout the period for which benefits are sought," as well as the burden of proof in the first four steps of the inquiry. *Id.* at 374 (citing 20 C.F.R. § 404.1512(a)); *Selian*, 708 F.3d at 418. If the claimant passes the first four steps, however, there is a "limited burden shift" to the Commissioner at step five. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). At step five, the Commissioner need only show that "there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.*

In reviewing a decision by the Commissioner, I conduct a "plenary review" of the administrative record but do not decide *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam); *see Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam) ("[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting

2

inferences can be drawn."). I may reverse the Commissioner's decision "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 374–75. The "substantial evidence" standard is "very deferential," but it requires "more than a mere scintilla." *Brault*, 683 F.3d at 447–48. Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek*, 802 F.3d at 375. Unless the Commissioner relied on an incorrect interpretation of the law, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

## II.   Facts

Drawn Depoto applied for Social Security disability insurance benefits on September 14, 2012, alleging that she had been disabled since August 10 of the same year. ALJ Decision, R. at 24. Depoto—who had been injured in a car accident in November 2011, *id.* at 30—identified her disabilities as, among other things, "obesity, degenerative disc disease of the cervical spine, anxiety disorder, depressive disorder, and lumbosacral spondylosis without myelopathy." *See id.* at 27; Compl., Doc. No. 1, at ¶ 4. The SSA initially denied Depoto's claim on December 18, 2012, finding that although Depoto's "condition result[ed] in some limitations in [her] ability to perform work related activities, . . . [her] condition [was] not severe enough to keep [her] from working."[1] Disability Determination Explanation (Initial), R. at 125. The SSA adhered to its decision upon reconsideration on March 13, 2013.[2] Disability Determination Explanation

---

[1] The SSA consultant, Dr. Khan, deemed Depoto's statements regarding her symptoms only "[p]artially [c]redible" because the "[s]everity of s[ymptoms] [was] not fully supported by [medical evidence of record] on file." Disability Determination Explanation (Initial), R. at 120.
[2] Dr. Golkar, the SSA consultant at the reconsideration level, agreed with Dr. Khan that the [s]everity of s[ymptoms] [was] not fully supported by [medical evidence of record] on file." Disability Determination Explanation (Reconsideration), R. at 134. He added that the medical

(Reconsideration), R. at 138. Depoto then requested a hearing before an ALJ, which was held on January 7, 2014. *Id.*

At the hearing, ALJ Matthew Kuperstein questioned Depoto and her attorney regarding Depoto's receipt of unemployment benefits, Tr. of ALJ Hr'g, R. at 52, as well as her claim to have taken off time from work following her car accident. *Id.* at 53. ALJ Kuperstein noted that Depoto's "earning[s] record [did] not show[] . . . a reduction in [her] earnings," and agreed to "leave the record open for two weeks [so that she] c[ould] supply the pay stubs for 2012." *Id.* at 54. He later warned Depoto's attorney that the issue whether Depoto had taken time off work pertained to her "credibility," because he "want[ed] to see if she [was] telling the truth . . . or if she [was] lying to [him]." *Id.* at 110. Despite the warning, Depoto did not submit pay stubs during the additional period the ALJ left the record open. ALJ Decision, R. at 24.

The ALJ also questioned Depoto about other claimed ailments, some of which she appears to have abandoned on her current petition for review. For example, Depoto asserted that she suffered from carpal tunnel syndrome, which caused her to "drop things all the time" and prevented her from "lift[ing] more than two pounds." Tr. of ALJ Hr'g, R. at 55–56. The ALJ observed that he "d[id]n't see any diagnosis . . . for [carpal tunnel syndrome]," that he "d[id]n't see any treatment for it," and that he therefore "d[id]n't see any basis for any limitations regarding it." *Id.* at 75. The ALJ also pressed Depoto with respect to her alleged incontinence: she claimed that she "wet [her]self . . . about 20 times during the week," but—to the ALJ's evident surprise—"still [did] not wear[] diapers." *Id.* at 83. With those physical disabilities, as

---

evidence of record "as well as her [Activities of Daily Living] [do] not fully support [the] degree of her alleged functional limitations due to physical impairment." *Id.* (capitalization omitted).

well as Depoto's pain and mental impairment, the ALJ stated that he "just d[id]n't see . . . [t]he

extent [of] th[o]se limits . . . in the record." *Id.* at 78.

The ALJ also heard testimony from a vocational expert, John Bopp. The ALJ presented

Bopp with a hypothetical of Depoto's characteristics, i.e., a person who "was limited to light

exertional work with . . . standing and walking no more than four hours cumulative during an[]

eight-hour workday," who was "limited to only occasional climbing ramps and stairs, balancing,

stooping, kneeling, crouching or crawling," and who could only perform "work that involve[d]

understanding, remembering and carrying out simple instructions and making simple work-

related decisions." *Id.* at 91. Bopp testified that such a person could be employed in a number of

jobs, such as "surveillance system monitor, . . . cutter and paster, . . . charge account clerk, . . .

[t]elephone quotation clerk, . . . toy stuffer, . . . [e]yeglass frame polisher . . . , table worker, . . .

[and] order clerk." *Id.* at 94. On examination by Depoto's attorney, Bopp added that if the

hypothetical person "were limited to lifting up to 10 pounds occasionally and . . . needed to get

up and move around every 10 minutes for five minutes, and . . . were further limited to only

occasional reaching," no work would be available for her in the national economy. *Id.* at 100–01.

After the hearing, on April 29, 2014, the ALJ issued an opinion in which he found that

Depoto "ha[d] not been under a disability, as defined in the Social Security Act, from August 10,

2012, through the date of th[e] decision." ALJ Decision, R. at 36–37. At the first step, the ALJ

found that Depoto "ha[d] not engaged in substantial gainful activity since . . . the alleged onset

date." *Id.* at 27. At the second step, the ALJ found that Depoto's "obesity, degenerative disc

disease of the cervical spine, anxiety disorder, depressive disorder, and lumbosacral spondylosis

without myelopathy" were "severe impairments" that "ha[d] been diagnosed by approved

medical sources and confirmed by clinical findings and diagnostic testing."[3] *Id.* At the third step, the ALJ determined that Depoto's impairments were not "per se disabling" because Depoto "d[id] not have the requisite neurological deficits" under SSA regulations.[4] *Id.* at 28–30. The ALJ then assessed Depoto's residual functional capacity based on the evidence in the record, and found that she could "perform sedentary work . . . except" that she "[was] limited to occasional climbing of ramps and stairs and occasional stooping, kneeling, crouching, or crawling; . . . never climbing ladders, ropes, or scaffolds; . . . frequent rather than constant handling, fingering, or feeling; and . . . work involving understanding, remembering, and carrying out simple instructions and simple work related decisions." *Id.* at 30.

Although Depoto's residual functional capacity would not allow her "to perform any past relevant work," ALJ Kuperstein determined that "there are jobs that exist in significant numbers in the national economy that [Depoto] c[ould] perform." *Id.* at 35. Relying on "the testimony of the vocational expert," the ALJ ruled that Depoto "[was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that "[a] finding of 'not disabled' [was] therefore appropriate." *Id.* at 36. He denied Depoto's request for Social Security disability insurance benefits. *Id.* at 37.

---

[3] Depoto's claimed foot ailments, carpal tunnel syndrome, obstructive sleep apnea, and incontinence were not "severe," the ALJ ruled, either because they "d[id] not cause more than minimal functional limitations" (in the case of the foot ailments and sleep apnea), or because they were not "medically determinable" in that "[t]he evidence in the record indicate[d] that the claimant ha[d] neither sought nor received . . . treatment . . . since her alleged onset date" (in the case of carpal tunnel syndrome and incontinence). ALJ Decision, R. at 27–28.
[4] Depoto has not challenged the ALJ's holding that "[t]he severity of [her] mental impairments, considered singly and in combination, do not meet or medically equal the criteria" for per se disability. *See* ALJ Decision, R. at 28; Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13.

Depoto requested review by the SSA's Appeals Council on May 13. Request for Review of Hearing Decision/Order, R. at 20. Concluding that there was "no reason . . . to review the [ALJ]'s decision," the Appeals Counsel "denied [Depoto's] request for review" on December 16, 2015. Notice of Appeals Council Action, R. at 6. Depoto then filed a complaint in this court on February 16, 2016, requesting that I reverse the Commissioner's decision. Compl., Doc. No. 1.

## III.    Discussion

On appeal, Depoto does not challenge the ALJ's findings that Depoto "ha[d] not engaged in substantial gainful activity since . . . the alleged onset date," ALJ Decision, R. at 27; that she suffered from a number of "severe impairments," such as "obesity, degenerative disc disease of the cervical spine, anxiety disorder, depressive disorder, and lumbosacral spondylosis without myelopathy," *id.*; that her ailments were not "per se disabling," *id.* at 28–30; and that "there are jobs that exist in significant numbers in the national economy" that a person with the residual functional capacity found by the ALJ could perform. *Id.* at 35. Instead, she attacks the ALJ's residual functional capacity determination at step four and the process by which he arrived at it.

The issues for my review are (1) whether the ALJ properly weighed the medical opinion evidence, (2) whether the ALJ correctly determined Depoto's residual functional capacity, and (3) whether the ALJ properly assessed Depoto's credibility. The first issue appears partly to be a legal question subject to de novo review—insofar as it turns on whether the ALJ properly applied SSA regulations—and partly to be a factual question where the ALJ's "findings must be given conclusive effect so long as they are supported by substantial evidence." *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks omitted). The second and third issues are factual questions reviewed under the standard of substantial evidence.

A.  <u>Did the ALJ properly evaluate the medical opinion evidence?</u>

Depoto argues that the ALJ's decision improperly "gave 'little weight' to the opinions"

from Depoto's treating physicians in determining Depoto's residual functional capacity,

"[d]espite the rules that make clear opinions from treating physicians are generally entitled to

deference." Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 3. Specifically, the ALJ wrote

that he gave "little weight" to Advanced Practice Registered Nurse Alyssa Anderson because she

was a "non-medical source" and her opinion was "extreme and not consistent with treatment

notes from the nurse or other medical sources." ALJ Decision, R. at 34. The ALJ also gave "little

weight to the opinion of Dwight Ligham," Depoto's pain treatment specialist, because Dr.

Ligham's conclusions "regarding [Depoto]'s back conditions . . . [were] extreme and not

consistent with his treatment notes or the treatment notes of other medical sources." *Id.* Depoto

contends that the ALJ should have given the opinions "controlling weight" under SSA

regulations, Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 5 (citing 20 C.F.R. §

404.1527(c)(2)), or else—if the ALJ "was not required to give the opinions from the treating

sources controlling weight"— should have "consider[ed] the opinions under the[] factors" listed

in 20 C.F.R. § 404.1527(c)(2)–(6). *Id.* The Commissioner responds that "the ALJ properly

declined to give controlling or great weight to the[] two opinions" because "nothing in the . . .

regulations establishes a categorical rule that the opinions of [treating] sources will always be

given more weight regardless of the evidence in the record," and "the ALJ provided good

reasons for giving little weight to the opinion[s]" here. Def.'s Mem. Supp. Mot. Affirm, Doc.

No. 15, at 5–7. After examining the record, I agree with the Commissioner.

"The treating physician rule provides that an ALJ should defer to 'to the views of the

physician who has engaged in the primary treatment of the claimant,'" but need only assign those

8

opinions "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."[5] *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(c)(2)). When the ALJ "do[es] not give the treating source's opinion controlling weight," he must "apply the factors listed" in SSA regulations, 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418. After considering those factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion," *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004), and provide "good reasons" for the weight assigned. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). But "where the ALJ's reasoning and adherence to the regulation are clear," the ALJ need not "slavish[ly] recite[] each and every factor" listed. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). Furthermore, "[g]enuine conflicts in the medical evidence are for the Commissioner"—not the court—"to resolve." *Burgess*, 537 F.3d at 128.

In the instant case, the treating physician rule did not apply to Nurse Anderson's opinion because, as the Commissioner notes, "a nurse practitioner is not an 'acceptable medical source' as defined by the regulations." Def.'s Mem. Supp. Mot. Affirm, Doc. No. 15, at 6 (citing 20 C.F.R. § 404.1513; Social Security Ruling 06-03p, 2006 WL 2329939). "[N]urse practitioners are considered 'other' medical sources . . . , but their opinions are not entitled to the same weight

---

[5] Originally a rule devised by the federal courts, the treating physician rule is now codified by SSA regulations, but "the regulations accord less deference to unsupported treating physician's opinions than d[id] [the Second Circuit's] decisions." *See Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

as the opinions of an acceptable medical source." *Id.* (citing 20 C.F.R. § 404.1513(d)(1); Social

Security Ruling 06-03p, 2006 WL 2329939). Depoto nevertheless argues that the ALJ should

have given Nurse Anderson's opinion controlling weight because "[a] co-signed opinion from a

non-acceptable medical source such as [Nurse] Anderson still must be appropriately weighed as

a treating source." *See* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 6 (citing *Payne v.*

*Astrue*, 2011 WL 2471288, at *5 (D. Conn. June 2, 2011)). But the case on which Depoto relies

states a different proposition. In *Payne v. Astrue*, U.S. District Judge Janet C. Hall held that the

ALJ "was not required to give . . . opinions" co-signed by a physician and a physician's assistant

"the controlling weight afforded to a treating physician's opinion," because there was no

"evidence that either doctor ever acted as [the claimant]'s treating physician, or that [the

physician's assistant] worked in close consultation with either doctor on the treatment of [the

claimant]." *Payne*, 2011 WL 2471288, at *5. Here, although Nurse Anderson's opinion was later

"signed by a medical doctor," Mark A. Perrotti, the doctor's signature was not dated, the co-

signed opinion was simply a duplicate of Nurse Anderson's opinion from several months earlier,

and "treatment records from the office . . . confirm that [Depoto] was seen by Nurse Anderson . .

. and not Dr. Perrotti." *See* ALJ Decision, R. at 34; Def.'s Mem. Supp. Mot. Affirm, Doc. No.

15, at 6–7 (citing, e.g., R. at 354–65, 409–21, 477–78). Therefore, under Judge Hall's reasoning

in *Payne*, the ALJ "was not required to give th[e] opinion[] [of Nurse Anderson] the controlling

weight afforded to a treating physician's opinion." *See Payne*, 2011 WL 2471288, at *5.

     The treating physician rule did apply to the opinions of Dr. Ligham, Depoto's pain

treatment specialist, but I conclude that ALJ Kuperstein gave "good reasons" for "not gi[ving]

th[at] treating source's opinion controlling weight." *See Burgess*, 537 F.3d at 129; 20 C.F.R. §

404.1527(c)(2). Specifically, the ALJ found as a factual matter that "the level of limitations

regarding the claimant's back conditions that [Dr. Ligham] assessed are extreme and not consistent with his treatment notes or the treatment notes of other medical sources." ALJ Decision, R. at 34. Dr. Ligham's treatment notes made "repeated references . . . to the claimant's stable health," *id.*; documented that Depoto could walk without assistance, retained full strength in her extremities, and had "grossly intact" cranial nerves, *see, e.g.*, Treatment Notes (Sept. 12, 2012), R. at 338, *id.* (Mar. 11, 2013), R. at 403, *id.* (Nov. 19, 2013), R. at 545; and characterized Depoto's "work capacity" as "intact" in July 2012. *Id.* (July 10, 2012), R. at 334. One year later, Dr. Ligham recorded that Depoto's "[m]ed[icine] program continue[d] to be helpful" and gave her "about 40–50 [percent] pain relief," and that her activities of daily living and "ab[ility] to do chores, shop, [and] drive" were "intact." *Id.* (July 8, 2012), R. at 536. In addition, less than two months before issuing his restrictive opinion on November 26, 2013, Dr. Ligham wrote that he "discussed work capacity" with Depoto and advised her "that [p]atients [who] were in pain do better when they remain engaged in the workforce." *Id.* (Oct. 8, 2013), R. at 505. Dr. Ligham "suggested [to Depoto] that if she were to retrain she would need to engage in work that is more intellectual and less physical," *id.*, a recommendation that appears at odds with his assessment shortly thereafter that Depoto could only sit for two hours per day and "must . . . get up and move around" every ten minutes.[6] *See* Multiple Impairment Questionnaire, R. at 481–82.

The inconsistency between Dr. Ligham's opinion and his treatment notes presented a "[g]enuine conflict[] in the medical evidence . . . for the Commissioner to resolve." *See Burgess*,

---

[6] In addition—as counsel for the Commissioner pointed out at the hearing—even if Depoto's symptoms abruptly worsened just prior to Dr. Ligham's November 26, 2013 opinion, that would not demonstrate an inability "to engage in any substantial gainful activity . . . for a continuous period of not less than 12 months" before the ALJ's decision on April 29, 2014. *See Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (per curiam) (quoting 42 U.S.C. § 423(d)(1)(A)).

537 F.3d at 128. Although ALJ Kuperstein did not "slavish[ly] recite[] each and every factor"

listed in the SSA regulations, *see Atwater*, 512 F. App'x at 70, he did "apply th[ose] factors." 20

C.F.R. § 404.1527(c)(2). The ALJ's decision noted, for example, that Dr. Ligham's opinion was

"not consistent with . . . [his] repeated references . . . to the claimant's stable health," or with her

"physical examinations." ALJ Decision, R. at 34; *see Selian*, 708 F.3d at 418 ("In order to

override the opinion of the treating physician, . . . the ALJ must explicitly consider, *inter alia*: . .

. the amount of medical evidence supporting the opinion . . . , [and] the consistency of the

opinion with the remaining medical evidence . . . ."). Just recently, the Second Circuit held that

where a doctor's opinion "w[as] in conflict with content in that doctor's own clinical notes, and in

conflict with the opinion of [other physicians]," those factors "constitute[d] 'good reasons' for the

limited weight attributed." *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (summary

order). Furthermore, even if "the record contains evidence" that supports Dr. Ligham's opinion,

it also "contains substantial evidence supporting the conclusion" drawn by the ALJ. *Sanders v.

Comm'r of Soc. Sec.*, 506 F. App'x 74, 76 (2d Cir. 2012) (summary order). Because "[i]t is not

[my] function to determine *de novo* whether [Depoto] is disabled," *Brault*, 683 F.3d at 447, nor

"to resolve evidentiary conflicts" in the record, *Aponte v. Sec'y, Dep't of Health & Human

Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), I affirm the ALJ's decision not to give controlling

weight to Dr. Ligham's opinion.

For the same reasons, I conclude that—after he decided not to give Nurse Anderson's and

Dr. Ligham's opinions controlling weight—ALJ Kuperstein properly evaluated the

persuasiveness of the opinions under the factors listed in 20 C.F.R. § 404.1527(c)(2)–(6). "An

ALJ need not recite every piece of evidence that contributed to the decision, so long as the record

'permits [the court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d

172, 178 n.3 (2d Cir. 2013) (per curiam). Here, the ALJ was sufficiently specific in writing that Nurse Anderson's and Dr. Ligham's opinions were "extreme and not consistent with treatment notes . . . or other medical sources," such as Depoto's psychiatric providers, podiatrist, and primary care doctor.[7] *See* ALJ Decision, R. at 34–35; *Camille*, 652 F. App'x at 27 ("The ALJ was permitted to consider Dr. [Ligham]'s treatment notes in weighing the opinions of Dr. [Ligham] and [the other sources]; and []he was permitted to conclude that [the other doctors'] opinions w[ere] more reliable."). Hence, I affirm the ALJ with regard to his treatment of Nurse Anderson's and Dr. Ligham's opinions.

B.   Does substantial evidence support the ALJ's residual functional capacity determination?

In addition to arguing that the ALJ improperly considered the medical evidence, Depoto contends that the ALJ's residual functional capacity determination is not supported by substantial evidence in the record. *See* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 6–8. The Commissioner responds that "[t]he ALJ properly evaluated the evidence of record and substantial evidence supports his [residual functional capacity] finding for a range of sedentary work." Def.'s Mem. Supp. Mot. Affirm, Doc. No. 15, at 11. I agree with the Commissioner.

Between steps three and four of the SSA's analysis for disability claims, the ALJ must "determine[], based on all the relevant medical and other evidence of record, the claimant's

---

[7] Nurse Anderson's and Dr. Ligham's opinions were also inconsistent with the views of the SSA consultants, Dr. Khan and Dr. Golkar, *see* Disability Determination Explanation (Initial), R. at 120; Disability Determination Explanation (Reconsideration), R. at 134, and "the report of a consultative physician may constitute [substantial] evidence" that, if it "contract[s]" the opinion of a treating physician, renders the latter "not binding." *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam). The ALJ only gave "less weight to the assessments of" the SSA consultants here, however, because "additional medical evidence received in the course of developing the claimant's case for review . . . [and] a different interpretation of the earlier records . . . justifie[d] a conclusion that the claimant's impairments are more severe than was concluded by" the consultants. *See* ALJ Decision, R. at 33.

'residual functional capacity,' which is what the claimant can still do despite the limitations imposed by his impairment." *Greek*, 802 F.3d at 373 n.2 (citing 20 C.F.R. § 404.1520(b)). The ALJ's determination need not "perfectly correspond with" any medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make a[] . . . finding that [is] consistent with the record as a whole." *Id.* In assessing a claimant's residual functional capacity, SSA regulations require the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as well as "discuss[ing] the [claimant]'s ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describ[ing] the maximum amount of each work-related activity the [claimant] can perform based on the evidence available in the case record." Social Security Ruling 96-8p, 1996 WL 374184, at *7. Finally, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

Depoto argues that the ALJ's residual functional capacity determination in the instant case was inadequate because it does not contain "any reference by the ALJ to specific medical findings or [to] other persuasive evidence in the record that supports the particular physical limitations found." Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 7. She also contends that "the ALJ grossly mischaracterized the record by finding that the record does not contain any significant clinical or diagnostic abnormalities," *id.* at 6; "contradict[ed] [his own] conclusions that [Depoto]'s testimony about her conditions [was] not credible," *id.* at 7; and "failed to cite any testimony from [] Depoto that support[ed] a finding . . . [that] she c[ould] perform sedentary work." *Id.* I conclude that Depoto's objections are without merit.

First, although the ALJ did describe Depoto's "medical examinations" as "generally normal," ALJ Decision, R. at 32, 34, he did not "grossly mischaracterize[] the record." *Contra* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 6. Rather, the ALJ based his description on "[d]iagnostic evidence" such as "[c]ervical spine imaging . . . [that] showed no fracture or instability," and an "MRI of the spine . . . [that] indicated only two levels of degenerative disc disease." ALJ Decision, R. at 32 (citing Radiological Consultation Report, R. at 367; Treatment Notes (Sept. 9, 2013), R. at 544). Those statements were not instances of the ALJ "arbitrarily substitut[ing] his own judgment for competent medical opinion" or "set[ting] his own expertise against that of a physician," *see Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), but were in fact near-verbatim quotes from the treatment reports of Depoto's own physicians. *See* Radiological Consultation Report, R. at 367; Treatment Notes (Sept. 9, 2013), R. at 544. Thus, they represented the ALJ validly "choos[ing] between properly submitted medical opinions." *See Balsamo*, 142 F.3d at 81; *see also Burgess*, 537 F.3d at 129 ("[T]he Commissioner's conclusion that the claimant is not disabled" may be supported "by other substantial evidence in the record, such as . . . a negative MRI."); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (summary order) ("The ALJ appropriately noted that the objective medical evidence . . . and [the doctor]'s own treatment notes did not support the diagnoses and serious functional limitations contained in his statements. . . . [T]here is substantial evidence in the record to support her finding.").

With regard to the ALJ's treatment of Depoto's hearing testimony, the ALJ was not required "to cite any testimony from [] Depoto that supports a finding . . . [that] she can perform sedentary work," *see* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 7, so long as his decision was properly "based on all the relevant medical and other evidence of record."

15

*Greek*, 802 F.3d at 373 n.2 (citing 20 C.F.R. § 404.1520(b)). Although an ALJ must "take the claimant's reports of pain and other limitations into account" in making a residual functional capacity determination, he need not "accept the claimant's subjective complaints without question." *Genier*, 606 F.3d at 49; *cf. Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (summary order) ("treating physician's opinions . . . based upon plaintiff's subjective complaints of pain and unremarkable objective tests" were "not 'well supported by medically acceptable clinical and laboratory diagnostic techniques'" and not entitled to "controlling weight") (citing 20 C.F.R. §§ 404.1527(d)(2) , 416.927(d)(2)). Instead, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49. Here, ALJ Kuperstein stated that he credited "the claimant's subjective complaints . . . only to the extent [that] they [were] reasonably consistent with the objective mental evidence and other evidence of record." ALJ Decision, R. at 33. Far from "fail[ing] to cite any testimony from [] Depoto that supports a finding . . . [that] she can perform sedentary work," the ALJ partially relied on Depoto's self-reports. *See id.* at 35 ("[T]he above residual functional capacity assessment . . . is supported by the claimant's testimony and medical treatment."); *contra* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 7. What he did not do—and was not required to do—was unquestioningly accept Depoto's "testimony that appear[ed] inconsistent with the record."[8] ALJ Decision, R. at 33; *see*

---

[8] Needless to say, there is no inconsistency in the ALJ declining to credit some portions of Depoto's testimony and relying on others. As the finder of fact, the ALJ "may credit or discredit all or part of whatever testimony [he] hears in arriving at [his judgment]." *See Korte v. N.Y., N.H. & Hartford R. Co.*, 191 F.2d 86, 88 (2d Cir. 1951); *see Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 467 (1968) ("[T]he Deputy Commissioner's finding was supported by substantial evidence" because although "some of the testimony . . . was arguably inconsistent with other parts . . . , it was within the province of the Deputy Commissioner to credit part of the witness's testimony without accepting it all.").

16

*Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (summary order) ("[W]here the ALJ's decision to discredit a claimant's subjective complaints is supported by substantial evidence, [the court] must defer to his findings.").

Also unpersuasive is Depoto's claim that the ALJ did not "refer[] . . . to specific medical findings or [to] other persuasive evidence in the record that supports the particular physical limitations found." Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 7. In fact, ALJ Kuperstein extensively cited record evidence in support of his residual functional capacity determination, including Depoto's hearing testimony, ALJ Decision, R. at 30–31; treatment notes from Depoto's treating physicians, *id.* at 31–32; "[d]iagnostic evidence" such as cervical spine imaging and an MRI, *id.* at 32; and the opinions of Depoto's other healthcare providers. *Id.* at 33–34. Again, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of [the] decision.'" *Cichocki*, 729 F.3d at 178 n.3. And "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Durante v. Colvin*, No. 13-cv-1298, 2014 WL 4852881, at *25 (D. Conn. Aug. 7, 2014), *approved and adopted*, 2014 WL 4843684 (D. Conn. Sept. 29, 2014). Here, the ALJ's discussion of the evidence, in conjunction with his ample citations to the record, is more than adequate to "permit [me] to glean the rationale of the ALJ's decision." *See Mongeur*, 722 F.2d at 1040; *see also Fisher v. Bowen*, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect [ALJ] opinion unless there is reason to believe that the remand might lead to a different result.").

17

Under the "very deferential" substantial evidence standard, I consider the ALJ's residual functional capacity determination to have been based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447–48; *Greek*, 802 F.3d 375. Therefore, because "there is substantial evidence to support the determination," I affirm the ALJ's decision on that point. *See Selian*, 708 F.3d at 417.

C.   <u>Does substantial evidence support the ALJ's credibility finding?</u>

Depoto also challenges the ALJ's decision to treat "[her] allegations [as] not credible." *See* Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 13, at 9. When determining residual functional capacity, "the ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier*, 606 F.3d at 49. The ALJ need not "accept the claimant's subjective complaints without question," however. *Id.* "[H]e may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* The ALJ's credibility findings are "entitled to great deference" and may be reversed "only if they are patently unreasonable." *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks omitted); *see Aponte*, 728 F.2d at 591 ("If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."). I do not consider the the ALJ's credibility findings to have been "patently unreasonable" or unsupported by "substantial evidence," and therefore affirm them. *See Pietrunti*, 119 F.3d at 1042; *Aponte*, 728 F.2d at 591.

SSA regulations provide a two-step process for evaluating a claimant's subjective assertions of pain and other limitations. *Genier*, 606 F.3d at 49. First, the ALJ must decide "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). Second, if

the claimant does suffer from such an impairment, the ALJ must consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record," taking into account (i) statements the claimant or others make about her impairments, (ii) her restrictions, (iii) her daily activities, (iv) her efforts to work, and (v) any other relevant statements she makes either to "medical sources during the course of examination or treatment," or to the SSA "during interviews, on applications, in letters, and in testimony in [] administrative proceedings." *Id.* (quoting 20 C.F.R. § 404.1512(b)(1)(iii)) (internal alterations and quotation marks omitted). Ultimately, "[a]s a fact-finder, the ALJ has the discretion to evaluate [] credibility." *Pietrunti*, 119 F.3d at 1042 (internal quotation marks omitted). "It is the function of the [ALJ], not the reviewing courts, . . . to appraise the credibility of witnesses, including the claimant." *Aponte*, 728 F.2d at 591 (internal alterations omitted).

In the instant case, the ALJ found that Depoto suffered from the "severe impairments" of "obesity, degenerative disc disease of the cervical spine, anxiety disorder, depressive disorder, and lumbosacral spondylosis without myelopathy," ALJ Decision, R. at 27, and so apparently determined that Depoto "suffer[ed] from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."[9] *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). At the second stage, however, the ALJ concluded that Depoto's claimed symptoms could not "reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *See Genier*, 606 F.3d at 49 (internal quotation marks omitted).

---

[9] The ALJ discounted Depoto's complaints with regard to other disorders, such as carpal tunnel syndrome, obstructive sleep apnea, and incontinence. *See* ALJ Decision, R. at 27–28. Depoto has not challenged his decision with regard to those illnesses.

For example, Depoto claimed that she was a "paranoid driver" after her November 2011 car accident, ALJ Decision, R. at 31 who was so afraid "of being rear ended" that she could no longer drive even a few miles to work. Tr. of ALJ Hr'g, R. at 60. But as the ALJ noted, Depoto "drove to work [for] eight to nine months after the accident," ALJ Decision, R. at 31, and she told her psychiatric provider in August 2013 that she was "feeling more comfortable and relaxed in a car" and "dr[ove] on the highway independently." *Id.* at 32; Psychiatry (Outpatient) Progress Note (Aug. 28, 2013), R. at 585; *see also id.* (Sept. 23, 2013), R. at 589 ("She has been driving regularly without excess anxiety. . . . She did not report having any flashbacks of her accident and reports being independent on the road."); *id.* (Oct. 8, 2013), R. at 591 ("She continues to drive independently and has minimal distressing thoughts related to driving."). And although Depoto "testified to missing work because of her impairment" after the car accident, she "actually had increased earnings . . . directly following her motor vehicle accident," and failed to submit payroll records to substantiate her testimony even after the ALJ warned her that her statements at the hearing "appear[ed] inconsistent with the record." *See* ALJ Decision, R. at 33. Similarly, Depoto testified at the hearing that she "had [her] mother move in . . . to help [Depoto] clean around the house and help [her] shower . . . [and] vacuum," adding that "[b]ecause it hurts to bend . . . [her mother] basically shower[ed] [her]." Tr. of ALJ Hr'g, R. at 57, 73. To her mental health provider, however, Depoto reported throughout late 2013 and early 2014 "that [she] was caring for her mother instead." ALJ Decision, R. at 33; *see* Psychiatry (Outpatient) Progress Note (Oct. 8, 2013), R. at 591 ("She requested help . . . with regard to . . . the impact of caregiving for her mother . . . ."); *id.* (Oct. 31, 2013), R. at 593 ("Dawn continues to report anxiety about caregiving for her elderly mother."); *id.* (Nov. 5, 2013), R. at 595 ("Dawn described intense frustration with caregiving for her elderly mother . . . ."); *id.* (Jan. 2, 2014), R.

at 599 ("Dawn described caregiving for her mother as her greatest source of stress and anger . . .

."). As a result, the ALJ reasonably concluded that "[t]he inconsistencies between . . . evidence in

the record and [Depoto's] hearing testimony reduce[d] the credibility of her hearing statements."

ALJ Decision, R. at 33.

The ALJ also found Depoto's testimony inconsistent with "other statements with respect

to [her] daily activities." *See Genier*, 606 F.3d at 50. For example, despite testifying at the

hearing that she was so debilitated that she could only drive "once a week," relied on her

husband and mother to help her grocery shop, and could not do dishes without "drop[ping]

something and break[ing] it," *see* Tr. of ALJ Hr'g, R. at 59, 67, in July 2013, Depoto told Dr.

Ligham that she "remained able to do chores, shop, and drive." ALJ Decision, R. at 28 (citing

Treatment Notes (July 8, 2013), R. at 536). In October 2013, Depoto told her psychiatric

provider that she "dr[o]ve approximately five days per week," *id.* at 29 (citing Treatment Notes

(Oct. 21, 2013), R. at 609), and two weeks later, she told the same provider that she "continued

to care for [her pet] birds, her husband, and her mother." *Id.* (citing Treatment Notes (Nov. 4,

2013), R. at 607). The ALJ was entitled to find that "the inconsistency between [Depoto]'s

testimony and [her] medical records . . . weighed against a positive credibility finding as to

[Depoto]'s subjective assessment of the intensity of [her] symptoms." *See Campbell v. Astrue*,

465 F. App'x 4, 7 (2d Cir. 2012) (summary order); *see also Calabrese*, 358 F. App'x at 277–78

("[T]he ALJ's adverse credibility finding was . . . amply supported by evidence that [the

claimant] . . . admitted her ability to cook, clean, do laundry, shop, and handle her own finances

despite her professed claims of disabling and continuous pain and mental confusion."). Thus,

"the ALJ's decision to discount [Depoto]'s subjective complaints is supported by substantial

evidence." *See Calabrese*, 358 F. App'x at 278.

None of that is to say that Depoto did not experience pain: "[Depoto] definitely reported pain, in both [her] testimony and some supporting medical documents." *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) (summary order). But "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Here, the record contained "substantial medical evidence" that Depoto was "able to undertake a variety of physical tasks." *See Prince*, 490 F. App'x at 400. Moreover, the ALJ accommodated Depoto's "legitimate limitations" by ensuring that her residual functional capacity only allowed for "occasional climbing of ramps and stairs, . . . occasional stooping, kneeling, crouching, or crawling, . . . never climbing ladders, ropes, or scaffolds, . . . frequent rather than constant handling, fingering, or feeling, . . . [and] work involving understanding, remembering, and carrying out simple instructions." *See id.*; ALJ Decision, R. at 30. Therefore, I affirm the ALJ's appraisal of Depoto's credibility in making his residual functional capacity determination.

## IV.   Conclusion

For the reasons set forth above, I deny Depoto's Motion for Judgment on the Pleadings, Doc. No. 12, and grant the Commissioner's Motion to Affirm, Doc. No. 15. The Clerk is directed to enter judgment for the Commissioner and close the case.

So ordered at Bridgeport, Connecticut, this 31st day of January 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge